EQUITABLE TRUST COMPANY,
Plaintiff-Appellant,

v.

COMMODITY FUTURES TRADING COMMISSION, Defendant-Appellee.

No. 81–1020.

United States Court of Appeals,
Fifth Circuit.

March 3, 1982.

Johnson, Oliver & Gainey, San Antonio, Tex., for plaintiff-appellant.

Gregory C. Glynn, Associate Gen. Counsel, Glynn L. Mays, Sp. Counsel, Josephine Wang, Gen. Counsel, Washington, D. C., for defendant-appellee.

Before GEE, GARZA and REAVLEY, Circuit Judges.

GEE, Circuit Judge:

On November 23, 1977, the Commodity Futures Trading Commission ("Commission") issued an order in the matter of a December 1977 coffee "C" futures contract, an executory contract for future sale, delivery, and payment of coffee traded on the New York Coffee and Sugar Exchange ("Exchange"). The Exchange is designated by the Commission as a "contract market." 7 U.S.C. § 7. The order was issued pursuant to section 8a(9) of the Commodity Futures Trading Commission Act of 1974, 7 U.S.C. § 12a(9).[1] The emergency order, issued *ex parte* without a hearing, stated that, on the basis of market surveillance data and other information, the Commission "has reason to believe that there exists a threat of a market manipulation or corner, and that acts of a foreign government or governments are affecting trade in coffee in a manner which is preventing the market from accurately reflecting the forces of supply and demand."[2] The Commission ordered the Exchange to proceed in accordance with the Exchange resolution of the same day and to order the reduction of all holdings in the coffee futures market on a phased schedule.

Arguing that issuance of the Commission's order constituted an abuse of the Commission's statutory authority, Equitable brought its first complaint against the Commission in May 1977 (*Equitable I*). Jurisdiction was premised on 28 U.S.C. § 1337(a).[3] The Commission moved to dismiss for lack of subject-matter jurisdiction and for failure to state a claim upon which relief could be granted. The district court, relying on *Board of Trade of Chicago v. Commodity Futures Trading Commission*, 605 F.2d 1016 (7th Cir. 1979), *cert. denied*, 446 U.S. 928, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980), held that the Commission's emergency order, pursuant to its powers under 7 U.S.C. § 12a(9), is agency action committed to agency discretion by law and, as such, is exempt from judicial review under 5 U.S.C. § 701(a)(2).[4] The complaint in *Equitable I* was accordingly dismissed on September 28, 1979, for lack of subject-matter jurisdiction. *See Equitable Trust Co. v. Commodity Futures Trading Commission*, 2 Comm.Fut.L. Rep. (CCH) ¶ 20,902 (W.D.Tex., Oct. 1, 1979). Equitable did not appeal the dismissal of its first complaint but instead, less than two months later, instituted a second action. Jurisdiction in the second action was now premised on 28 U.S.C. § 1331(a)[5] and alleged that, through its emergency order, the Commission had deprived Equita-

---

1. 7 U.S.C. § 12a(9) provides:

   The Commission is authorized ... (9) to direct the contract market whenever it has reason to believe that an emergency exists, to take such action as, in the Commission's judgment, is necessary to maintain or restore orderly trading in, or liquidation of, any futures contract. The term "emergency" as used herein shall mean, in addition to threatened or actual market manipulations and corners, any act of the United States or a foreign government affecting a commodity or any other major market disturbance which prevents the market from accurately reflecting the forces of supply and demand for such commodity ....

2. Specifically, the Commission perceived a high level of open interests relative to known or anticipated supplies of coffee that could reasonably be expected to be deliverable under the contract, a concentration among the same small group of traders, both of positions to take delivery under the contract and of ownership of the known supply, and a pattern of increasing concentration of spot month positions among the same small groups of traders over the previous year.

3. 28 U.S.C. § 1337(a) provides, *inter alia*: "The district court shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regarding commerce or protecting trade and commerce against restraints and monopolies ...."

4. 5 U.S.C. § 701(a)(2) precludes judicial review of "agency action ... committed to agency discretion by law."

5. 28 U.S.C. § 1331(a) provides:

   The district court shall have original jurisdiction over all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States, except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

ble of property rights in violation of the due process clause of the fifth amendment. The Commission filed a Rule 12(b)(6) motion to dismiss the second complaint (*Equitable II*) on the ground that Equitable's new claim was barred by *res judicata*. On October 23, 1980, the district court entered summary judgment in favor of the Commission on the ground of *res judicata* and, in the alternative, on the ground that Equitable failed to state a constitutional claim upon which relief could be granted. The district court also denied Equitable's motion to amend the judgment to provide that, as a matter of law, the Commission's emergency order did not deprive plaintiff of the right to challenge in court the resolution that the Exchange passed earlier the same day. Equitable here appeals from the dismissal of its second complaint against the Commission. We affirm.

Equitable admits that its complaint in *Equitable II* is an intentional attempt to avoid the jurisdictional dismissal of *Equitable I* on the ground that under the doctrine of *Nguyen Da Yen v. Kissinger*, 528 F.2d 1194 (9th Cir. 1975), a federal district court has jurisdiction to hear a claim of deprivation of constitutional rights by an exercise of agency discretion. Equitable's complaint in *Equitable II* acknowledges, as it must, that the Commission's emergency order is committed to agency discretion by law and would, absent a claim of constitutional deprivation, ordinarily not be subject to judicial review. Equitable's constitutional allegation is essentially that it was deprived without due process of law of "valuable vested property rights" as a seller of December 1977 coffee under the terms of its "C" mild coffee contract. The "property rights" allegedly involved are of two kinds: (1) the vested property rights of market participants to have "the Commission, in the exercise of its 7 U.S.C. § 12a(9) emergency powers, act in accordance with the language of the statute and the intent of Congress," and (2) the right to sue to challenge the Exchange's resolution without having to contend with the defense that the Exchange was only doing what the Commission directed it to do. Equitable argues that its second complaint therefore consists of a "different cause of action" not barred by *res judicata* and that, in any case, *res judicata* is inapplicable since the first complaint was not dismissed on the merits but for lack of subject-matter jurisdiction.

■■■ Equitable's latter contention goes too far. Dismissal for lack of jurisdiction is not, of course, dismissal on the merits sufficient to make an entire subsequent action *res judicata*. Wright & Miller, *Federal Practice & Procedure* § 1350 (1969); *Mann v. Merrill-Lynch, Pierce, Fenner & Smith, Inc.*, 488 F.2d 75, 76 (5th Cir. 1973). But, as the Supreme Court has pointed out, "the principles of res judicata apply to questions of jurisdiction as well as to other issues." *American Surety Co. v. Baldwin*, 287 U.S. 156, 166, 53 S.Ct. 98, 101, 77 L.Ed. 231 (1932). The abating effect of a jurisdictional dismissal has been variously described, but whether termed "direct estoppel," Restatement, Judgments § 49, Comment B (1942), or "issue preclusion," Restatement (2d), Judgments § 68 (tentative draft no. 4, 1977), the law is clear: a dismissal for lack of subject-matter jurisdiction, while "not binding as to all matters which could have been raised," is, however, conclusive as to matters actually adjudged. *Acree v. Airline Pilots Association*, 390 F.2d 199, 203 (5th Cir.), *cert. denied*, 393 U.S. 852, 89 S.Ct. 88, 21 L.Ed.2d 122 (1968); Restatement (2d), Judgments § 68, *supra*. A jurisdictional dismissal forecloses litigation "only of those issues of fact or law that were actually litigated and necessarily decided by a valid and final judgment between the parties . . . ." *Segal v. American Telephone & Telegraph Co.*, 606 F.2d 842, 845 (9th Cir. 1979). *See also Durfee v. Duke*, 375 U.S. 106, 112, 84 S.Ct. 242, 245, 11 L.Ed.2d 186 (1963), and cases cited therein (discussing the issue in the context of full faith and credit).[6]

---

**6.** The exceptions to the *res judicata* rule outlined here have been enumerated in Restatement (2d), § 68.1, *supra*. Equitable does not claim that any of these exceptions are applicable to its case.

*Equitable I* settled the question of whether, under any of the plaintiff's various theories, the court had subject-matter jurisdiction under 28 U.S.C. § 1337(a). The merits of the court's determination of that question are immaterial here. *Acree v. Airline Pilots Association*, 390 F.2d at 203; *Estevez v. Nabers*, 219 F.2d 321, 323 (5th Cir. 1955).[7] The complaints in *Equitable I* and *II* both alleged that the Commission exceeded its statutory authority in finding an emergency here and in issuing its order. In *Board of Trade of Chicago v. Commodity Futures Trading Commission*, 605 F.2d at 1021 n.6, the Commission conceded that agency discretion is judicially reviewable where action is challenged on the ground that the Commission exceeded its statutory authority. The *Equitable I* court found that despite Equitable's allegations, "the thrust of Equitable's argument, however, is that no emergency existed either because of the market conditions or because of the Exchange's resolution that ostensibly remedied the situation." *Equitable Trust Co. v. Commodity Futures Trading Commission, supra,* ¶ 20,902 at 23,664. The *Equitable I* court found that it did not "have jurisdiction to review the Commission's determination that an emergency existed, or to review the remedial measures taken." *Id.* The claim in *Equitable II* that the Commission exceeded its statutory authority, made in virtually identical language and based on the same factual situation as *Equitable I*, is clearly barred by *res judicata.*

The only inquiry on appeal is whether Equitable has demonstrated a substantial, nonfrivolous interest in a constitutionally cognizable property protected under the fifth amendment or is merely cloaking its old *Equitable I* theories for jurisdiction in constitutional garb. A comparison of appellant's complaints in *Equitable I* and *II* demonstrates that the constitutional allegations here are mere verbiage, "made solely for the purpose of obtaining jurisdiction." *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). Equitable's claim of a "vested property right" in the Commission's exercise of its emergency powers in a nonarbitrary manner is no more than a claim of a constitutional entitlement to judicial review of agency action. Indeed, the allegations of harm in the two complaints are virtually identical. *Equitable I* alleged that the

> order of defendant [Commission] was and is on its fact, arbitrary, capricious, an abuse of discretion, not in accordance with law, in excess of defendant's statutory authority, and without observance of procedure required by law .... The order is arbitrary, capricious, an abuse of discretion, unlawful and, therefore, invalid.

*Equitable II* alleges that

> due process of law ... require[s] that any exercise by the Commodity Futures Trading Commission of its § 8(a)(9) [§ 8a(9)] emergency powers that deprives a person of vested property rights without any prior notice or hearing must be necessary, impartial, fair, in the public interest, objective, reasonable, calculated to maintain or restore orderly trading in or liquidation of a futures contract, and in accordance with all of the statutory duties and obligations imposed on the Commodity Futures Trading Commission by the Commodity Exchange Act.

In both *Equitable I* and *II*, the plaintiff's plea is for judicial review of the Commission's determination that an "emergency" existed in the coffee market, a matter determined by the court in *Equitable I* not to be subject to judicial review. Equitable's reliance on *Nguyen Da Yen v. Kissenger, supra,* is misplaced. In that class action suit, the plaintiffs asserted that the Immigration and Naturalization Service's allegedly involuntary detention of Vietnamese children in the custody of persons other than their parents violated the children's fifth amendment rights to liberty and due

---

7. "The possibility of a wrong decision does not undermine the rule of *res judicata*; the remedy for a wrong decision is the right of appeal, not an unlimited opportunity to bring repetitious petitions." *Walsh v. International Longshoremen's Ass'n, AFL–CIO,* 630 F.2d 864, 869 (1st Cir. 1980).

process. The Ninth Circuit held that the Administrative Procedure Act does not sanction a violation of constitutional rights committed under the guise of an exercise of discretion. There is no question that *Nguyen* involved a nonfrivolous and substantial allegation of well-established constitutional rights. *Nguyen* does not stand for the proposition that a bare assertion of a constitutional right to judicial review is sufficient to override the Administrative Procedure Act.

Equitable's claim of a constitutional right to challenge the Exchange's emergency resolution (presumably in state court), without having to contend with the defense that the Exchange was only doing what the Commission directed it to do, fares no better. This allegation of jurisdiction was also made in the *Equitable I* complaint (albeit without the constitutional verbiage):

> The hereinabove mentioned order of defendant has adversely affected an aggrieved plaintiff in that persons in Cause No. 78–CI–10640 in Bexar County, Texas district court have been and are continuing to rely on it and assert it as an excuse and justification for breaching contracts with plaintiff and to assert and represent in said cause that the order required plaintiff to take action pursuant to its terms, and authorize others to act on plaintiff's behalf should plaintiff refuse to act according to its terms.

The remedy sought in *Equitable I* was in fact for a judicial declaration of the

> rights of plaintiff and defendant with respect to defendant's order issued November 23, 1977, in the matter of the December 1977 coffee "C" futures contract traded on the New York Coffee & Sugar Exchange, Inc. to be that the order was, is and has at all times been of no force or effect of any kind whatsoever and could not, did not and shall not under any circumstances affect directly or indirectly plaintiff's rights, contractual or otherwise . . . .

The district court in *Equitable I* determined that the additional fact that a third party, the Exchange, may be implicated still does not permit judicial review of the Commission's exercise of its emergency powers. Calling the right to judicial review in the circumstances a "vested property right" does not make the district court's determination any less binding on us. Moreover, even if the right to a state court action is a cognizable constitutional right that was not effectively raised and dismissed in *Equitable I*, Equitable does not allege on appeal or in its *Equitable II* complaint that the Exchange has successfully asserted the Commission's order in defense to Equitable's state court challenge of the Exchange's emergency order. The Commission has advised this court that the Exchange has in fact not asserted the Commission order thus far in Texas state court, that the Texas court has dismissed the Exchange from the state court proceeding for lack of personal jurisdiction, and that, on May 6, 1981, the state court entered judgment against Equitable on the merits. This Texas state court judgment is, according to the Commission, still on appeal. In view of these facts, Equitable's claim of violation of constitutional right is, at best, premature and constitutes an improper request for an advisory opinion. Equitable obviously has the right to challenge the Exchange's emergency resolution in any court of law with jurisdiction, and Equitable will be accorded all of the procedural safeguards of the fifth and fourteenth amendments in such an action. Whether these procedural safeguards will nevertheless fail to assure that Equitable's cause of action will be heard because the Exchange will assert the Commission's order in defense is a question that may never arise. Even if it does, this court should not attempt to prejudice a state court's determination of that issue. This court is therefore bound by *Equitable I*'s determination of nonreviewability.

Equitable further contends that the district court was wrong in dismissing its complaint *sua sponte* on the ground of failure to state a claim. Our conclusion that Equitable's claims are barred by *res judicata* pretermits discussion of this issue. A strict demarcation of dismissal on the merits and dismissal for want of jurisdiction is, how-

ever, not always possible. *See, e.g., Estevez v. Nabers, supra.* Insofar as the district court determined that Equitable's allegations in *Equitable I* failed to state a claim for breach of statutory duty, we are bound by that determination, as well as by its determination that the Commission's order is barred from judicial review. We are also well aware that the accuracy of calling "jurisdictional" a dismissal for failure to state a substantial, nonfrivolous constitutional claim has been questioned. *See Bell v. Hood,* 327 U.S. at 683, 66 S.Ct. at 776. Our conclusion here is merely that the complaints in *Equitable I* and *II* presented the district court with the same ultimate question: is the Commission's statutory authority to adopt emergency action without prior notice or opportunity for a hearing subject to judicial review? Since the court in *Equitable I* decided that question in the negative, it was the district court's duty in *Equitable II* to bar relitigation of the issue.

■ Equitable requests that the case should nevertheless be remanded to the trial court

> with instructions to dismiss the complaint in Equitable II for lack of standing on the grounds that the Commission's emergency order of November 23, 1977, was an order of the Commission directed at the Exchange as a contract market and as such was a matter between the Commission and the Exchange and a matter about which neither Equitable nor any other person other than the Exchange has standing to object.

As the Commission properly points out, this is, in effect, an improper request for an advisory opinion as to who, if anyone, may contest the Commission's emergency order. Accordingly, Equitable's request is denied, as this court's power extends only to live cases and controversies.

■ Finally, Equitable contends that the Commission's emergency order deprived it of equal protection. This allegation of jurisdiction was only raised on appeal and was never presented to the district court. Absent a showing of manifest injustice, appellate courts should not consider issues raised for the first time on appeal. *Delesdernier v. Porterie,* 666 F.2d 116, 124–25 (5th Cir. 1982). We therefore decline to pass upon Equitable's equal protection contention.

AFFIRMED.