NO. 07-11-00114-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 24, 2012

---

THOMAS M. COREA AND THE COREA FIRM, P.L.L.C.,
APPELLANTS

v.

PAMELA J. BILEK, BILEK FAMILY TRUST, BILEK
QUARTER HORSES, L.L.C., APPELLEES

---

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 98,871-E; HONORABLE DOUGLAS WOODBURN, JUDGE

---

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellants,[1] Corea and the Corea Firm,[2] appeal an order of the trial court

awarding to appellees,[3] Pamela Bilek, Bilek Quarter Horses, L.L.C., and Bilek Family

Trust, sanctions and attorney's fees. Corea contends that the trial court abused its

---

[1] Appellants will hereinafter be referred to as Corea.

[2] Corea's client, John Anthony "Tony" Burris, was also sanctioned by the trial
court but did not appeal the trial court's order.

[3] Appellees will hereinafter be referred to as Bilek.

discretion in sanctioning Corea and in the amount of the sanction and in the award of attorney's fees against it. We disagree and affirm the judgment of the trial court.

Factual & Procedural Background

On April 19, 2010, Coreaf filed, on behalf of John Anthony Burris, a lawsuit against Bilek in the 40th District Court of Ellis County, Texas. In the Ellis County lawsuit, Corea contended that Bilek had libeled, defamed, and slandered Burris. The basis of the complaint was allegedly a letter sent by Bilek to the American Quarter Horse Association complaining of Burris's activity as a judge for the Association.

In response to the lawsuit, Bilek filed a special appearance contending that the State of Texas lacked personal jurisdiction over her and the related Bilek entities. After allowing the parties to develop the record regarding personal jurisdiction, the trial court conducted a hearing on Bilek's plea to the jurisdiction. Subsequently, the trial court dismissed the lawsuit for lack of personal jurisdiction. The dismissal was without prejudice and was entered on August 2, 2010.

Seven days later, on August 9, 2010, Corea filed, on behalf of Burris, lawsuits in Potter, Victoria, and Medina Counties of Texas. The lawsuits alleged the same conduct against Bilek toward Burris that was the subject of the Ellis County lawsuit. On the same day the multiple lawsuits were filed in Texas, Corea sent an email advising that, "This is NEVER going away. Pam needs to get that through her drunk head that I will chase her to the end of the earth and she needs to get this settled now." Bilek, through her counsel, replied on August 11, 2010, by advising Corea that sanctions would be sought if Corea served any of the three new lawsuits. The Potter County lawsuit was

2

subsequently served on Bilek. On December 20, 2010, Bilek filed a special appearance, motion to abate, original answer and motion to disqualify Corea and the firm. On December 28, 2010, Bilek filed a motion for sanctions, and later, on January 21, 2011, an amended motion for sanctions. After the amended motion for sanctions was filed, but before the date for the hearing on the motion, on February 1, 2011, Corea filed a nonsuit of the Potter County action against Bilek.

Bilek's amended motion for sanctions requested sanctions under three different authorities. First, Bilek requested sanctions pursuant to Rule 13 of the Texas Rules of Civil Procedure.[4] Second, Bilek requested sanctions under Chapter 10 of the Texas Civil Practice and Remedies Code.[5] Finally, Bilek requested sanctions pursuant to the court's inherent power over the judicial process.

The trial court initially set the sanctions matter for hearing on February 2, 2011. The record indicates that the February 2 hearing date had to be postponed due to inclement weather. The trial court rescheduled the hearing for February 3, 2011. At the February 3 hearing, Corea appeared by telephone and Bilek appeared through the personal appearance of counsel. It is noteworthy that Corea never requested a continuance of the February 3 hearing. During the hearing, Bilek's trial counsel offered three exhibits. The exhibits were received into evidence without objection. Toward the end of the hearing, the trial court requested that Bilek's trial counsel furnish the court

---

[4] Further reference to the Texas Rules of Civil Procedure will be by reference to "Rule ___" or "rule ___."

[5] Further reference to the Texas Civil Practice & Remedies Code will be by reference to "Chapter __," "chapter __," "section ___," or "§ ____."

with a breakdown of attorney's fees incurred as a result of the filing of the Potter County lawsuit. At the conclusion of the hearing, the trial court took the matter of the sanctions under advisement. On February 22, 2011, the trial court notified all counsel that it had decided to grant the motion for sanctions as to Thomas M. Corea, John Anthony "Tony" Burris, and the Corea Law Firm. The trial court's letter awarded Bilek the sum of $50,000 for costs and attorney's fees incurred from August 10, 2011, through the hearing on the motion for sanctions. Further, the trial court awarded $10,000 as payment to compensate Bilek for the deliberate and intentional harassment and inconvenience. Finally, the trial court's letter awarded conditional attorney's fees in the event of unsuccessful appeal. The letter of the trial court was memorialized in an order entered against Corea on March 3, 2011. This appeal followed.

Corea contends that the trial court abused its discretion in four particulars:

(1) In granting the motion for sanctions because Corea's lawsuit was not groundless;

(2) In granting the motion for sanctions because the Corea lawsuit was not filed in bad faith or for purposes of harassment;

(3) In granting the motion based upon its inherent powers because the conduct complained of did not interfere with the core functions of the court; and

(4) In granting the sanctions against Corea in the amount of the award.

We disagree with Corea's contentions and affirm the judgment of the trial court.

4

Standard of Review

A trial court's order regarding imposition of sanctions is reviewed for abuse of discretion. See Am. Flood Research, Inc. v. Jones, 192 S.W.3d 581, 583 (Tex. 2006). This standard applies to actions for sanctions under Rule 13 or Chapter 10. See Low v. Henry, 221 S.W.3d 609, 614 (Tex. 2007). Likewise, this is the standard of review applied to actions for sanctions under the trial court's inherent powers. See In re S.M.V., 287 S.W.3d 435, 442 (Tex.App.—Dallas 2009, no pet.).

A trial court abuses its discretion when it acts without reference to any guiding rules or principles such that the ruling in question was arbitrary and unreasonable. See Am. Flood, 192 S.W.3d at 583. A ruling based on an erroneous view of the law or a clearly erroneous assessment of the evidence results in an abuse of discretion. See Tarrant County v. Chancey, 942 S.W.2d 151, 154 (Tex.App.—Fort Worth 1997, no writ). Part of the determination of abuse of discretion in a sanctions case requires the appellate court to determine if the sanctions were appropriate or just. See Am. Flood, 192 S.W.3d at 583. This determination requires a two-part inquiry by the appellate court. Id. First, there must be a direct relationship between the improper conduct and the sanction imposed. Id. This directs the attention of the appellate court to a decision whether the sanction, if one should have been imposed, should be imposed on the party, the party's counsel, or both. Id.[6] Second, the appellate court must ensure that less severe sanctions would not have been sufficient. Id.

---

[6] In the case before the Court, the party, Burris, did not appeal the trial court's award of sanctions against him.

5

Rule 13 and Chapter 10 Sanctions

In pertinent part, Rule 13 provides:

The signature of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment.

Chapter 10.001 provides:

The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

(1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) each denial in the pleading or motion of a factual contention is warranted on the evidence, or for a specifically identified denial, is reasonably based on a lack of information or belief.

§ 10.001.

The allegations that led to the filing of the motions for sanctions are centered on the lawsuit filed by Corea in Ellis County. According to Bilek's motion for sanctions, Corea filed the Potter County action one week after the trial court in Ellis County ruled

6

that Texas did not have sufficient contacts with Bilek to render her subject to personal jurisdiction. When the Potter County trial court conducted the hearing on the motion for sanctions, it had the pleadings from Ellis County and Potter County before it. A review of the Ellis County petition and the Potter County petition reveals that they are identical. From the record, we can ascertain that a significant amount of discovery, time, and effort went into the jurisdictional contest in Ellis County. At the end of all of that effort, the trial court determined that Texas lacked sufficient contacts with Bilek to exercise personal jurisdiction over her.

Bilek alleged that, based upon the action of the Ellis County trial court, the action of filing the lawsuit in Potter County without additional or different jurisdictional facts alleged was filing a lawsuit that was groundless and the same was brought in bad faith or to harass Bilek. This is so, she contends, because the doctrine of collateral estoppel precludes Corea from relitigating the same jurisdictional issues resolved the week previously in Ellis County.

Corea contends that the doctrine of collateral estoppel does not apply to this situation because the Ellis County lawsuit was dismissed without prejudice and because the facts sought to be litigated in the second lawsuit were not fully and fairly litigated in the first action. To properly review the action of the trial court, we begin by reviewing the law as it relates to collateral estoppel.

In order to establish that collateral estoppel applies, the proponent must establish that 1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action, 2) those facts were essential to the judgment in the first action, and 3)

7

the parties were cast as adversaries in the first action. See John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst, 90 S.W.3d 268, 288 (Tex. 2002). If these elements are established, then the litigants are precluded from litigating that particular issue again. See Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex. 1992).

Bilek's theory is that the issue of personal jurisdiction is the issue that was fully litigated in the previous action. A check of the record bears out this contention. In the Ellis County matter, the trial court spent a considerable amount of judicial time and effort in reviewing the matter of personal jurisdiction over Bilek and the Bilek entities. As to the second element of collateral estoppel, personal jurisdiction over Bilek and the Bilek entities is a prerequisite for the trial court to go forward with the Potter County action. Finally, as to the third element, there is no contest that the parties were adversaries in the first action. Therefore, it appears that Bilek's theory of collateral estoppel applies.

Corea however contends that the doctrine would not apply because the judgment rendered in Ellis County is not a final judgment. Next, Corea contends that the issues sought to be litigated in the second action were not fully and fairly litigated in the first action. As to the first contention, the Ellis County trial court would have committed reversible error had it dismissed the Corea lawsuit with prejudice. See Nguyen v. Desai, 132 S.W.3d 115, 118 (Tex.App.—Houston [14th Dist.] 2004, no pet.) (holding that a dismissal for lack of personal jurisdiction could not be with prejudice because a second action could be filed if new jurisdictional facts were to arise that would support the exercise of personal jurisdiction). However, for purposes of personal jurisdiction over Bilek under the facts presented, the Ellis County order dismissing Corea's lawsuit

8

is final.  John G. & Marie Stella Kenedy Mem'l Found., 90 S.W.3d at 288.  We note that the record reflects that Corea opted not to appeal the ruling in Ellis County.

As to the second issue, Corea contends that additional issues giving rise to personal jurisdiction arose after the first special appearance.  The problem with Corea's contention is that the record contains nothing more than a contention.  A review of the petition filed by Corea in Potter County yields the exact same jurisdictional facts as were alleged in the Ellis County lawsuit.  Further, during the February 3 hearing, Corea offered nothing in the way of proof or even argument that would demonstrate different jurisdictional facts.  Our review of the complete record leads to the conclusion that the jurisdictional facts alleged in the Potter County lawsuit were fully heard in the Ellis County case.  As such, the ruling of the Ellis County trial court on those facts precludes the relitigation of those matters in Potter County.  Id.

However, this does not complete our review for purposes of sanctions ordered pursuant to Rule 13 or Chapter 10.  We must now determine if the petition filed in Potter County was groundless or brought in bad faith for purposes of harassment.  See Rule 13; § 10.001.  The federal case of Valdez v. Kreso, Inc. is instructive on this question. [7] Valdez v. Kreso, Inc. 144 F. Supp.2d 663 (N.D. Tex. 2001).  In Valdez, the issue was sanctions pursuant to Rule 11(b) of the Federal Rules of Civil Procedure.  Id. at 664.  Rule 11(b), as pertinent in the case, provided as follows:

---

[7] When Texas courts are interpreting Rule 13, we may look to cases interpreting Rule 11 of the Federal Rules of Civil Procedure.  See Monroe v. Grider, 884 S.W.2d 811, 817 (Tex.App.—Dallas 1994, writ denied).

(b) REPRESENTATIONS TO COURT. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; . . . .

Id. at 664–65.  In Valdez, plaintiffs had previously brought the same action that alleged the same facts against the same defendants in state district court in Fort Worth, Texas. After the state district court considered the issue of personal jurisdiction over the defendants, the court entered an order finding defendants were not subject to personal jurisdiction in Texas.  No appeal was taken from that action.  Id. at 666.

Within a period of two weeks, the plaintiffs filed the same action in the Fort Worth Division of the Northern District of Texas.  Id.  Defendants filed a motion to dismiss citing a lack of personal jurisdiction.  Based upon these facts, the federal district court in Valdez conducted its own inquiry into whether the conduct of counsel in filing the second federal lawsuit violated the proscriptions of Rule 11(b) of the Federal Rules of Civil Procedure.  See id. at 667.  After outlining the factual pattern, the district court sanctioned the trial counsel.  See id. at 664.  The district court found that the attorney had "ignored the rule of long standing 'that principles of *res judicata* apply to

10

jurisdictional determinations—both subject matter and personal.'" Id. at 667 (quoting Ins. Corp. of Ireland v. Compagnie des Bauxite de Guinee, 456 U.S. 694, 702 n.9, 102 S.Ct. 2099, 72 L.Ed2d 492 (1982)). In addition to the Valdez case, Texas courts have previously held that dismissing a case for lack of personal jurisdiction precludes relitigation of the jurisdictional issues that were actually litigated and essential to the dismissal. See Fretz v. Reynolds, No. 04-03-00854-CV, 2004 Tex. App. LEXIS 11014, at *2–*3 (Tex.App.—San Antonio Dec. 8, 2004, pet. denied) (mem. op.) (citing Nguyen, 132 S.W.3d at 118).

Corea knew, or through any concept of proper inquiry, should have known that the issues litigated in Ellis County on personal jurisdiction could not be relitigated in the Potter County lawsuit. Accordingly, his actions in filing the Potter County lawsuit and the contemporaneous filing of identical suits in Victoria and Medina Counties a mere seven days after the dismissal amounted to a groundless action brought in bad faith or for purposes of harassment. See Valdez, 144 F.Supp.2d at 668; Miller v. State & County Mut. Fire Ins. Co., 1 S.W.3d 709, 717–18 (Tex.App.—Fort Worth 1999, pet. denied) (holding trial court did not abuse discretion in sanctioning party and attorney where third lawsuit filed with claims barred by *res judicata*). The harassment point is highlighted by the email that was sent to Bilek's counsel on the same day that the Potter County action was filed. Likewise, the filing of two other lawsuits in other Texas counties on that same day is evidence of Corea's intent to harass. Accordingly, we find that the trial court did not abuse its discretion in finding that the Potter County lawsuit was groundless and brought in bad faith or for purposes of harassment. See Rule 13; Chapter 10; Valdez, 144 F.Supp.2d at 668.

11

Corea maintains that, even if we find the action was groundless or brought in bad faith for purposes of harassment, the trial court still committed reversible error because it sanctioned Corea without conducting an evidentiary hearing. To support this theory, Corea cites the Court to Houtex Ready Mix Concrete & Materials v. Eagle Constr. & Envtl. Servs., L.P., 226 S.W.3d 514, 522 (Tex.App.—Houston [1st Dist.] 2006, no pet.), and R.M. Dudley Constr. Co. v. Dawson, 258 S.W.3d 694, 709 (Tex.App.—Waco 2008, pet. denied). As far as a statement of the law, the citations are correct. However, when applied to the record before the Court, we find that they do not support Corea's ultimate position. This is because the trial court conducted the evidentiary hearing required on February 3, 2011. Contrary to the statement in Corea's brief, the record reflects that the trial court received three exhibits during the hearing. Corea lodged no objection to any of the exhibits. Two of the exhibits were related to the degree of similarity between the Potter County and Ellis County petitions. The third exhibit dealt with an ancillary federal court suit in Kentucky.[8] Further, the trial court requested that Bilek provide a breakdown of attorney's fees and expenses incurred in answering the Potter County matter. This was provided by Bilek's trial counsel on February 8, 2011. The documentation before the Court reflects that Corea was provided a copy of the affidavit, and the record further reveals that no opposing affidavit was ever filed. This recitation of the record leads to only one conclusion: an evidentiary hearing was conducted. Corea's position to the contrary is grounded upon the fact that he did not do anything nor did he testify. That alone does not turn the hearing into a non-evidentiary hearing. To so rule would be to

---

[8] The exhibit was the trial court's order granting Corea's motion to nonsuit the Kentucky lawsuit. The trial court's order contains a finding that the Corea firm had an obvious conflict of interest in representing Burris against Bilek.

allow counsel to thwart the law by simply refusing to participate. The fact that Corea chose to attend by telephone and to voice no objections to the exhibits offered, either at the hearing on in the post-hearing submission, does not make this a non-evidentiary hearing. Accordingly, the trial court did not abuse its discretion by granting sanctions against Corea without conducting an evidentiary hearing. See Houtex, 226 S.W.3d at 522; R.M. Dudley, 258 S.W.3d at 709.

As to Corea's contentions that the trial court committed reversible error by granting sanctions pursuant to Rule 13 or Chapter 10, we disagree. The ruling of the trial court is firmly supported by both the evidence in the record and applicable case law on the subject. As such, it is not an abuse of discretion. See Tarrant County, 942 S.W.2d at 154.

Next, as part of the determination of abuse of discretion in a sanctions case, we must determine if the sanctions were appropriate or just. See Am. Flood, 192 S.W.3d at 583. This is a two-part inquiry. Id.

First, is there a direct relationship between the improper conduct and the sanction imposed? Id. In this review, we must ascertain whether the sanction was imposed on the true offender. Id. The record before us contains very few references to the part that Corea's client Burris played in the filing of the three additional lawsuits. However, Burris has opted not to appeal the ruling of the trial court. To that extent, Burris's culpability is not before the Court. However, the record is replete with the actions of Corea. With respect to Corea's actions, the record supports the proposition that Corea was determined to file the subsequent lawsuits, as evidenced by the email

13

that was in evidence before the trial court. Additionally, although another member of the Corea firm was cited in Bilek's motion for sanctions, the trial court elected not to impose sanctions against that attorney. This leads to the conclusion that the trial court, in fact, weighed the culpability and determined that the other attorney was not the true offender. Accordingly, it would appear that the trial court did make the determination to assess sanctions against the culpable party. See id.

The second part of the inquiry requires that we make certain that less severe sanctions would not have been sufficient to promote compliance. Id. To properly analyze this issue, we return to the very nature of Corea's actions that led to the filing of the motion for sanctions. After Corea's Ellis County lawsuit was dismissed for lack of personal jurisdiction, Corea filed the same lawsuit in three additional counties without changing any of the allegations regarding jurisdictional facts. Additionally, he sent an email threatening that this is never going away and he will chase Bilek to the ends of the earth. Although Corea was warned that, if service of the new lawsuit was attempted, Bilek would respond with a motion for sanctions, Corea persisted and had the lawsuit served on Bilek. Only after the motion for sanctions was filed did Corea file a motion for nonsuit of the Potter County lawsuit. Under this record, we cannot say a less severe sanction would have deterred the actions of Corea. Id.

Because we have found that the lawsuit was groundless and filed in bad faith or for purposes of harassment, and further that the trial court sanctioned the offending parties, we overrule Corea's issues regarding sanctions under Rule 13 and Chapter 10. Because of our holding regarding the Rule 13 and Chapter 10 sanctions, we do not

14

reach Corea's issue regarding sanctions pursuant to the trial court's inherent authority. See Tᴇx. R. Aᴘᴘ. P. 47.1.

## Amount of Sanctions

Corea's final issue challenges the amount of the sanctions awarded by the trial court. Corea's issue begins by contending that the amount of attorney's fees awarded violates its due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. In support of this contention Corea cites the Court to Glass v. Glass, a case from the Texarkana Court of Appeals that held that the due process clause, as applied to sanctions, mandates a reasonable relationship between the harm done and the sanctions imposed. Glass v. Glass, 826 S.W.2d 683, 688 (Tex.App.—Texarkana 1992, pet. denied). The Glass case simply explains the two-part inquiry outlined in the American Flood case described earlier in this opinion under a due process argument. See Am. Flood, 192 S.W.3d at 583. Having previously found that the trial court's decision to impose sanctions did not amount to an abuse of discretion under the American Flood standard of review, we see no reason to reanalyze the first part of Corea's issue under a different standard. The imposition of sanctions did not violate Corea's due process rights because there was a reasonable relationship between the harm done and the sanction assessed. See Glass, 826 S.W.2d at 688.

As to the allegation contained in Corea's issue that there was no evidentiary hearing held, that fails in regard to this issue just as it did in the issue regarding authority to sanction under Rule 13 or Chapter 10. The trial court conducted an evidentiary hearing; Corea simply decided to appear by telephone instead of in person.

Exhibits were admitted. The trial court requested Bilek to make a post-hearing submission regarding attorney's fees. The record reflects that Bilek's trial counsel did this on February 8, 2011, in the form of an affidavit regarding attorney's fees incurred. The certificate of service reflects that this was served on Corea on that day. The trial court did not issue a letter with its decision until February 21, 2011, and a final order was not signed until March 1, 2011. Yet the record contains no objections to the evidence submitted to the trial court.

The record reflects that Bilek's trial attorneys requested attorney's fees and expenses in excess of $69,000. Additionally, they requested $18,000 in sanctions to compensate Bilek for the harassment and inconvenience they had suffered. After reviewing the evidence submitted, the trial court awarded the attorney's fees and expenses of $50,000 and the sanctions of $10,000, both lesser amounts than Bilek sought. Our review of the attorney's fees affidavit reveals that the charges are segregated to activities that transpired contemporaneously with or after the filing of the Potter County lawsuit.

Unlike the Glass case, we have evidence that supports the award of the attorney's fees in question. See Glass, 826 S.W.2d at 689. Further, we have evidence that the trial court used its discretion to reduce the amount of attorney's fees to $50,000. From this totality of the record, we cannot say the award of $50,000 was an abuse of discretion. Likewise, in light of all of the evidence, the award of $10,000 as a sanction does not appear to be an abuse of discretion. Especially in light of Corea's pattern of

16

conduct as shown by the multiple filings and threatening email.  Accordingly, Corea's last issue is overruled.

## Conclusion

Having overruled all of Corea's issues, we affirm the judgment of the trial court.


Mackey K. Hancock
Justice